UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN R. MCWHIRTER, et al., | : | CIVIL NO. 4:12-CV-704 |
| | : | |
| Plaintiffs, | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| GEORGE SELEMBO, et al., | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

I.  **Statement of Facts and of the Case**

This diversity contract case comes before the court for consideration of a motion filed by the plaintiffs/counterclaim defendants to dismiss the counterclaim lodged against them by the defendants. (Doc. 7.) This motion is fully briefed by the parties, and is now ripe for resolution. (Docs. 9, 13, and 15.)

At this early stage in the litigation, the pleadings disclose two starkly different, competing and contrasting factual narratives pertaining to the contractual relationship between these parties. For their part, the plaintiffs allege that they loaned the defendants $200,000 in 2009 in order to purchase a residential property in North Carolina. (Doc. 1.) According to the plaintiffs' complaint, it was agreed that the

1

defendants would repay the loan at a rate of $20,000 per month. (Id.) Plaintiffs then allege that the defendants defaulted on this contractual obligation after making initial payments of $30,000, leaving a default of $170,000. (Id.)

In contrast, the defendants' answer and counterclaim describes a more extensive, inter-connected and inter-dependent series of financial transactions involving these parties. (Doc. 6.) Thus, while the defendants acknowledge the $200,000 loan from the McWhirters, the defendants assert that these parties have also been involved together for many years in a series of bio-diesel businesses established by the McWhirters in 2006. The Selembos' answer and counterclaim alleges that the defendants are minority investors in these bio-diesel businesses, and later loaned moneys to these businesses.

> According to the counterclaim:
>
> 8. Between 2006 and 2010, the Selembos made sizeable investments in the [McWhirter] biodiesel companies.
>
> 9. Following Mr. Selembo's initial profit-contingent investments, the Selembos provided loans to and otherwise incurred the debts of the biodiesel companies on behalf of Mr. McWhirter ("biodiesel debts").
>
> 10. As of January 1, 2009, the biodiesel debts totaled $537,315.07.
>
> 11. In or around June 2009, the Selembos purchased residential property in Mecklenburg County, North Carolina.
>
> 12. The Selembos experienced difficulties closing on the property in

North Carolina due to the outstanding biodiesel debts.

13. Mr. Selembo thus contacted Mr. McWhirter and asked Mr. McWhirter for complete payment of the biodiesel debts.

14. Mr. McWhirter refused to provide payment of the biodiesel debts, but agreed to provide a $200,000.00 loan from McWhirter FLP.

15. Mr. McWhirter is the general partner of McWhirter FLP.

16. On or about June 19, 2009, Mr. McWhirter provided the desired loan in his capacity as general partner of McWhirter FLP.

17. Mr. Selembo agreed to repay the $200,000.00 loan ("McWhirter FLP loan") by making $10,000.00 monthly payments.

18. As consideration for Mr. Selembo's repayments of the McWhirter FLP loan, Mr. McWhirter agreed to make timely and complete payments on the biodiesel debts.

19. Due to ongoing financial difficulties facing the biodiesel companies at that time, Mr. McWhirter agreed to make the remaining payments of the biodiesel debts in his personal capacity.

20. Mr. McWhirter's agreement to make the remaining payments on the biodiesel debts in his personal capacity was memorialized, in writing, by Mr. McWhirter.

21. Due to Mr. McWhirter's concern as to the sizeable interest on the biodiesel debts, the parties agreed that no interest would accrue on either the biodiesel debts or the McWhirter FLP loan.

22. Mr. Selembo made three timely payments on the McWhirter FLP loan.

23. After his third payment, Mr. Selembo stopped making payments on the McWhirter FLP loan because Mr. McWhirter refused to make any

payments on the biodiesel debts, an integral part of the consideration for the McWhirter FLP loan.

24. The parties thereafter engaged in further negotiations, and on or about September 3, 2011, Mr. McWhirter made a payment of $181,575.24 on the biodiesel debts.

25. Mr. McWhirter made the $181,575.24 payment from the bank account of yet another entity owned and/or operated by the McWhirters, Copper Beech Townhome Communities, LLP, a nationwide student housing provider.

26. Neither the McWhirters nor their business entities have made any further payments on the biodiesel debts.

27. The outstanding balance of the biodiesel debts is $355,739.83.

28. Mr. Selembo has repeatedly notified Mr. McWhirter that any further payments on the McWhirter FLP loan are contingent upon continued, complete payments on the biodiesel debts.

29. Mr. McWhirter has, in turn, notified Mr. Selembo that there will be no further payments on the biodiesel debts.

(Doc. 6, ¶¶8-29.)

Thus, fairly construed, the Selembos' counterclaim alleges the existence of a more complex contractual arrangement between these parties, an arrangement in which the defendants' obligation to repay the $200,000 debt was contingent upon the plaintiffs' concurrent obligation to make good on a $537,000 pre-existing debt. Alleging a breach of this more extensive contract, the Selembos seek the payment of $185,739.83 from the McWhirters, an amount which they claim is the sum of the

difference between what they owe the plaintiffs and the amount of the plaintiffs' pre-existing indebtedness to the defendants.

It is this counterclaim which is the subject the current motion to dismiss filed by the plaintiffs. For the reasons set forth below, it is recommended that this motion to dismiss be denied.

## II. Discussion

### A. Motion to Dismiss-Standard of Review

The plaintiffs have moved to dismiss this counterclaim, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a counterclaim should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a counterclaim fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the counterclaim and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the counter claimant. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court

should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of counterclaim, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a [counterclaim], they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded counterclaim must contain more than mere legal labels and conclusions. Rather, a counterclaim must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the

plaintiff has a "plausible claim for relief." In other words, a c[ounterclaim] must do more than allege the p[arty's] entitlement to relief. A c[ounterclaim] has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a counterclaim entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

### B. The Plaintiffs' Motion to Dismiss This Counterclaim Should Be Denied

Judged against these standards, the plaintiffs' motion at the outset of this litigation to dismiss this counterclaim fails. As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this contract dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000). The legal principles governing the interpretation of contracts under Pennsylvania law is familiar and well-settled. At the outset, the issue of whether a contract has arisen

8

between two parties generally presents a question of fact, particularly where the record contains conflicting evidence regarding intent. See Channel Home Centers v. Grossman, 795 F.2d 291, 300 (3d Cir. 1986) ("Under Pennsylvania law, when the record contains conflicting evidence regarding intent, the question of whether the parties formed a completed contract is one for the trier of fact.") (citation omitted).

Furthermore, the legal benchmarks applied to different types of agreements– oral and written–are also clearly settled. Initially, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). A contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Under Pennsylvania law, ambiguous contracts are interpreted by the trier of fact, and unambiguous contracts are interpreted by the court as a matter of law. Mellon Bank, 619 F.2d at 1011 n.10.

The United States Court of Appeals for the Third Circuit has aptly summarized Pennsylvania law regarding the interpretation of contractual language and terms:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being

9

> embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal citation omitted) (citing Murphy v. Duquesne Univ., 777 A.2d 418, 429-30 (Pa. 2001)). Furthermore, courts must, whenever possible, read contract provisions so as to avoid ambiguity. Id. at 247. Where a contract is not ambiguous, but is instead subject to only one reasonable interpretation, it is appropriate for a district court to resolve the issue of interpretation as a matter of law. See Norfolk S. Ry. v. Reading Blue Mountain & N. Ry., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004). However, when a party argues that a contract is sufficiently ambiguous to require parol evidence, that party must advance an alternate meaning of the contract which is commercially reasonable. See County of Mercer v. Unilect Corp., 612 F.Supp.2d. 638, 649 (W.D.

Pa. 2009)(collecting cases). Further, under Pennsylvania law, agreements must satisfy the following three requirements to be enforceable: (1) both parties must manifest an intent to be bound by the terms of the agreement; (2) the terms must be sufficiently definite to be enforceable; and (3) the agreement must be supported by consideration. ATACS Corp. v. Trans World Commc'ns., Inc., 155 F.3d 659, 666 (3d Cir. 1998) (internal citations omitted).

     Here, when we confine our consideration to the well-pleaded facts set forth in the defendants' counterclaim, we find that those well-pleaded facts would clearly give rise to a contractual counterclaim on behalf of the defendants against the plaintiffs, a contractual counterclaim that cannot on the pleadings be severed from the plainitffs' contractual claims against the defendants. Since resolution of the merits of these competing and well-pleaded contractual claims will inevitably entail consideration of matters far outside the pleadings, this counterclaim is not subject to dismissal on the pleadings for failure to state a claim upon which relief may be granted, and the plaintiffs' motion to dismiss should be denied.

     Apparently recognizing that the counterclaim, on its face, states a claim upon which relief may be granted, the plaintiffs invite us to rely upon the Colorado River abstention doctrine to dismiss this counterclaim, asserting that the counterclaim raises issues similar to those presented in a state court lawsuit recently filed by the

Selembos against a business operated by the McWhirters. We recommend that the court also decline this invitation to dismiss this counterclaim on abstention grounds, since the legal principles which govern Colorado River abstention weigh against such abstention at the outset of this case. These principles were aptly summarized by the United States Court of Appeals for the Third Circuit in the following terms:

> The Colorado River doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The doctrine is to be narrowly applied in light of the general principle that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); see also Colorado River, 424 U.S. at 813, 96 S.Ct. 1236 ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (internal quotation omitted). Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." Yang v. Tsui, 416 F.3d 199, 204 n. 5 (3d Cir.2005) (internal quotation and citation omitted). If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present. Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 171 (3d Cir.1999). We need not take up the parallel action analysis here because, even presuming parallelism, this action does not present the type of circumstances warranting abstention. In determining whether an action presents "extraordinary circumstances" we consider six factors: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4)

> the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." Spring City, 193 F.3d at 171. "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Colorado River, 424 U.S. at 818–19, 96 S.Ct. 1236. The balancing of factors is "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307-08 (3d Cir. 2009).

Here, we find that the plaintiffs have not yet carried their burden of proving that there exist in this case "extraordinary circumstances" that compel abstention in this case. In this regard, we note that of the six factors identified by Colorado River and its progeny, the third factor, "the desirability of avoiding piecemeal litigation, [i]s '[b]y far the most important factor' in the Colorado River decision itself. Moses H. Cone, 460 U.S. at 16, 103 S.Ct. 927." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 308 (3d Cir. 2009). Yet, in this case, the plaintiffs' abstention argument would seem to promote piecemeal litigation of what are alleged to be inextricably intertwined contractual claims by severing the plaintiffs' claims from those of the defendants, and consigning the defendants' claims to other proceedings in a separate legal system. Thus, as we view it, at this initial stage of

these proceedings, dismissal of this counterclaim is not compelled by the Colorado River doctrine. Quite the contrary, that doctrine cautions against dismissal of this claim on abstention grounds at this stage of the proceedings since litigation of both parties' claims in a single forum avoids the primary evil condemned by the Court in Colorado River, the piecemeal litigation of claims.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiffs' motion to dismiss the defendants' counterclaim (Doc. 6), be DENIED.[1]

---

[1]We also observe that there are also pending in this case two other motions: A motion by the plaintiffs for a protective order seeking to limit the use of subpoenas by the defendants to discover information relating to the Selembos' financial dealings with the biodiesel companies operated by the McWhirters. (Doc. 16.) We have conferred with counsel and informed them that, if the counterclaim survives a motion to dismiss, we believe that this financial information would be relevant to the counterclaim, provided the parties agreed to reasonable topical and temporal limitations on the scope of the subpoenas. Given our recommendation that the motion to dismiss this counterclaim be denied, we have therefore in a conference call conducted today asked the parties to consult on setting such reasonable limitations on these subpoenas. In addition, we note that the defendants have filed a motion to dismiss the plaintiffs' complaint, alleging that the plaintiffs have failed to join indispensable parties to this litigation; namely, the biodiesel companies. This motion further argues that the joinder of these parties will destroy diversity, a proposition which we have questioned. For their part, the plaintiffs have resisted this motion to dismiss, arguing in part that the motion is premature since the plaintiffs have not filed an answer to the counterclaim. If our recommendation that the motion to dismiss be denied is adopted by the district court, then the plaintiffs will be obliged to answer this counterclaim, and the pleadings on the counterclaim will be closed, enabling us to make a fully informed judgment regarding who may, or may not, be indispensable parties. To permit this

14

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of September, 2012.

                                                ***S/Martin C. Carlson***
                                                Martin C. Carlson
                                                United States Magistrate Judge

---

issue to be squarely joined, we will by separate order set a schedule for further proceedings and briefing on this motion.