# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN R. MCWHIRTER, et al., | : | CIVIL NO. 4:12-CV-704 |
| | : | |
| Plaintiffs, | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| GEORGE SELEMBO, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

This diversity contract case comes before the Court for consideration of a motion filed by the Defendants/Counterclaim Plaintiffs George and Priscilla Selembo (hereafter the Selembos), to dismiss the complaint lodged against them by the Plaintiffs, John and Jeanette McWhirter (hereafter the McWhirters). (Doc. 12.)  In this pleading, the Selembos argue that the McWhirters' complaint should be dismissed pursuant to Rule 12(b)(7), for failure to join certain allegedly indispensable parties.  This motion is fully briefed by the parties, and is now ripe for resolution. (Docs. 13, 15 and 27.)

At this early stage in the litigation, the parties' pleadings disclose two starkly different, competing and contrasting factual narratives pertaining to their contractual relationships. For their part, the Plaintiffs allege that they loaned the Defendants $200,000 in 2009 in order to purchase a residential property in North Carolina. (Doc. 1.) According to the Plaintiffs' complaint, it was agreed that the Defendants would repay the loan at a rate of $20,000 per month. (Id.) Plaintiffs then allege that the Defendants defaulted on this contractual obligation after making initial payments of $30,000, leaving a default of $170,000. (Id.)

In contrast, the Defendants' answer and counterclaim describes a more extensive, inter-connected and inter-dependent series of financial transactions involving these parties. (Doc. 6.) Thus, while the Defendants acknowledge the $200,000 loan from the McWhirters, the Defendants assert that these parties have also been involved together for many years in a series of bio-diesel businesses established by the McWhirters in 2006. The Selembos' answer and counterclaim alleges that the Defendants are minority investors in these bio-diesel businesses, and later loaned moneys to these businesses.

According to the counterclaim:

8. Between 2006 and 2010, the Selembos made sizeable investments in the [McWhirter] biodiesel companies.

9. Following Mr. Selembo's initial profit-contingent investments, the Selembos provided loans to and otherwise incurred the debts of the biodiesel companies on behalf of Mr. McWhirter ("biodiesel debts").

10. As of January 1, 2009, the biodiesel debts totaled $537,315.07.

11. In or around June 2009, the Selembos purchased residential property in Mecklenburg County, North Carolina.

12. The Selembos experienced difficulties closing on the property in North Carolina due to the outstanding biodiesel debts.

13. Mr. Selembo thus contacted Mr. McWhirter and asked Mr. McWhirter for complete payment of the biodiesel debts.

14. Mr. McWhirter refused to provide payment of the biodiesel debts, but agreed to provide a $200,000.00 loan from McWhirter FLP.

15. Mr. McWhirter is the general partner of McWhirter FLP.

16. On or about June 19, 2009, Mr. McWhirter provided the desired loan in his capacity as general partner of McWhirter FLP.

17. Mr. Selembo agreed to repay the $200,000.00 loan ("McWhirter FLP loan") by making $10,000.00 monthly payments.

18. As consideration for Mr. Selembo's repayments of the McWhirter FLP loan, Mr. McWhirter agreed to make timely and complete payments on the biodiesel debts.

19. Due to ongoing financial difficulties facing the biodiesel companies at that time, Mr. McWhirter agreed to make the remaining payments of the biodiesel debts in his personal capacity.

20. Mr. McWhirter's agreement to make the remaining payments on the biodiesel debts in his personal capacity was memorialized, in writing, by Mr. McWhirter.

21. Due to Mr. McWhirter's concern as to the sizeable interest on the biodiesel debts, the parties agreed that no interest would accrue on either the biodiesel debts or the McWhirter FLP loan.

22. Mr. Selembo made three timely payments on the McWhirter FLP loan.

23. After his third payment, Mr. Selembo stopped making payments on the McWhirter FLP loan because Mr. McWhirter refused to make any payments on the biodiesel debts, an integral part of the consideration for the McWhirter FLP loan.

24. The parties thereafter engaged in further negotiations, and on or about September 3, 2011, Mr. McWhirter made a payment of $181,575.24 on the biodiesel debts.

25. Mr. McWhirter made the $181,575.24 payment from the bank account of yet another entity owned and/or operated by the McWhirters, Copper Beech Townhome Communities, LLP, a nationwide student housing provider.

26. Neither the McWhirters nor their business entities have made any further payments on the biodiesel debts.

27. The outstanding balance of the biodiesel debts is $355,739.83.

28. Mr. Selembo has repeatedly notified Mr. McWhirter that any further payments on the McWhirter FLP loan are contingent upon continued, complete payments on the biodiesel debts.

29. Mr. McWhirter has, in turn, notified Mr. Selembo that there will be no further payments on the biodiesel debts.

(Doc. 6, ¶¶8-29.)

Thus, fairly construed, the Selembos' counterclaim alleges the existence of a more complex contractual arrangement between these parties, an arrangement in which the Defendants' obligation to repay the $200,000 debt was contingent upon the Plaintiffs' concurrent obligation to make good on a $537,000 pre-existing debt. In essence, the Selembos' counterclaim describes the McWhirters as co-obligors on these bio-diesel debts. Alleging a breach of this more extensive contractual arrangement, the Selembos seek the payment of $185,739.83 from the McWhirters, an amount which they claim is the sum of the difference between what they owe the Plaintiffs and the amount of the Plaintiffs' pre-existing indebtedness to the Defendants. The McWhirters have now filed a response to this counterclaim, (Doc. 24.), which generally denies that there is any connection between the parties' bio-diesel firm investments and this loan transaction. What is less clear from the McWhirters' response to the counterclaim is whether the McWhirters acknowledge an outstanding indebtedness to the Selembos on the part of these bio-diesel firms.

Having described this more nuanced and complex financial arrangement between the parties, the Selembos now argue that the bio-diesel firms are indispensable parties to this litigation, since the McWhirters' indebtedness as co-obligors arising out of these businesses forms part of the financial transaction between the parties. Because the bio-diesel firms are Pennsylvania corporation, the

5

Selembos further assert that the joinder of these indispensable parties would destroy diversity in this case, and thus compels dismissal of this action. For their part, the McWhirters dispute that the bio-diesel firms are in any legal sense either necessary or indispensable parties in this litigation.

For the reasons set forth below, it is recommended that this motion to dismiss be denied without prejudice.

**II.  Discussion**

This motion to dismiss the Plaintiffs' complaint calls upon us to consider the interplay of two rules of civil procedure. At the outset, Rule 12(b)(7) of the Federal Rules of Civil Procedure, provides that a complaint should be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Thus, Rule 19, in part, determines when dismissal of claims for failure to join parties is required. Rule 19, in turn, defines parties who must be joined in litigation in the following terms:

> Under Rule 19(a), the joinder of parties is compulsory or "necessary" if their joinder is "feasible." Specifically, the rule states in material part:
>
>> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or

> impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
>
> Courts treat clauses (1) and (2) in the disjunctive just as the rule phrases them. See Koppers, 158 F.3d at 175 ("As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible."). Additionally, . . . , a holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that it must dismiss a case because joinder is not feasible (i.e., will defeat diversity) and the party is indispensable to the just resolution of the controversy. See Janney Montgomery Scott, 11 F.3d at 405.

Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312-13 (3d Cir. 2007).

Yet, while Rule 19's definition of "necessary" parties defines the first step in any analysis of a motion to dismiss for failure to join "indispensable parties", there is a necessary second step to this analysis. In conducting this analysis, "we first must determine whether the absent [non-joined parties] should be joined as 'necessary' parties under Rule 19(a). If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship . . . , we next must determine whether the absent parties are 'indispensable' under Rule 19(b). Should we answer this question in the affirmative, the action cannot go forward. Janney Montgomery Scott, 11 F.3d at 404 (citing Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1053-54 (3d Cir.1988))." Gen. Refractories Co.

7

v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). "Put another way, [only] a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction. Under Rule 19(b), the four factors listed, though not exhaustive, are 'the most important considerations' in determining whether a party is indispensable. Gardiner v. V.I. Water & Power Auth., 145 F.3d 635, 640 (3d Cir.1998). These factors are: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b)." Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 319 (3d Cir. 2007).

These two related determinations regarding whether: first, joinder of party is "necessary" under Rule 19, and, second, whether that non-joined party is also "indispensable" compelling dismissal of an action, are governed by separate legal standards of review. Thus, to the extent that the court premises its decision on a Rule 19(a) determination that the absent party's joinder was "necessary" this conclusion of law is subject to plenary review. Janney Montgomery Scott, Inc. v. Shepard Niles,

Inc., 11 F.3d 399, 404 (3d Cir.1993). By contrast, the district court's Rule 19(b) determination that absent parties were indispensable, and dismissal is required because their joinder would destroy subject matter jurisdiction in diversity, rests in the sound discretion of the court and will be set aside only upon an abuse of discretion. Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007).

Here, in the exercise of the District Court's discretion we recommend that the Court find that on the present state of the pleadings the bio-diesel firms are not indispensable parties whose joinder would be mandatory, destructive of diversity, and would compel dismissal of this action. For their part, the Selembos have alleged that the bio-diesel firms are both necessary and indispensable because the McWhirters' commitment to repay funds loaned to those firms was an essential aspect of the loan agreement between these parties. Thus, the Selembos' argument seems to rest on two factual premises: first, that the bio-diesel firms contractually owe them money; and second, that the McWhirters individually agreed to make payments towards this acknowledged debt, effectively becoming co-obligors on this debt.

Construing the Selembos' position in this case in this fashion:

In applying Rule 19(a)(1) to this case, the specific question before us is whether a court can grant complete relief in a breach of contract action to the parties before it when only one of two co-obligors has been joined

9

as a defendant. The answer to this specific question depends on the law of contracts concerning the joint and several liability of persons who are co-promisors or co-obligors on one agreement. Two general authorities on the subject have identified a strong trend in favor of a principle that co-signers or co-obligors on a contract are jointly and severally liable for its performance. See 2 Samuel Williston, Williston on Contracts §§ 320, 336, at 649-657, 697-706 (3d ed. 1959) (while at early common law the rule was that co-obligors were jointly liable, the modern trend both in statute and judicial decision is towards implying joint and several liability); Restatement (Second) of Contracts § 289, at 410-11 (1981); see also Mamalis v. Atlas Van Lines, Inc., 364 Pa.Super. 360, 528 A.2d 198, 202 (1987), aff'd, 522 Pa. 214, 560 A.2d 1380 (1989). In Pennsylvania, whether liability on a contract is joint or joint and several seems to be treated as a question of construction or interpretation, not as a rule of law. See Morrison v. American Sur. Co., 224 Pa. 41, 73 A. 10, 11 (1909) ("In all contracts the parties may make their own bargain, and if they do so in *language showing an intention* to impose a several as well as a joint liability upon the obligors, the courts will enforce it against each party as well as against all the parties jointly.") (emphasis added); see also Wolgin v. Atlas United Fin. Corp., 397 F.Supp. 1003, 1012 (E.D.Pa.1975) ("Under Pennsylvania law, 'the intention of the parties as evidenced by the language employed in the agreement under consideration,' determines the status of the parties.") (citations omitted), aff'd, 530 F.2d 966 (3d Cir.1976). If the Agreement in question can be construed or interpreted as a contract imposing joint and several liability on its co-obligors, . . . , complete relief may be granted in a suit against only one of them. See Greenleaf v. Safeway Trails, Inc., 140 F.2d 889, 890 (2d Cir.1944) (indicating court has power to grant complete relief in absence of co-obligor to contract), cert. denied, 322 U.S. 736, 64 S.Ct. 1048, 88 L.Ed. 1569 (1944); cf. Park v. Didden, 695 F.2d 626, 631 (D.C.Cir.1982) ("An almost unbroken line of federal decisions holds that persons whose liability is joint and several may be sued separately in federal court.")

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405-06 (3d Cir. 1993).

Thus, the construction of this contractual arrangement urged by the Selembos, which seems to allege that the McWhirters became joint obligors on the debts of the bio-diesel firms when they agreed to make payments of those debts concurrently with the Selembos repaying a $200,000 loan, would under <u>Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., supra</u>, define the bio-diesel parties as parties who are not necessary or indispensable to this litigation since, with the Selembos' counterclaim construed in this fashion, the presence of one co-obligor, the McWhirters, allows for an appropriate recovery against that co-obligor on this contractual debt.

Thus, when we consider the four-part test prescribed by Rule 19, and <u>Gen. Refractories Co. v. First State Ins. Co.</u>, 500 F.3d 306, 319 (3d Cir. 2007), we find at the outset that the rule's first guiding principle–the extent to which a judgment rendered in the person's absence might be prejudicial to the person or those already parties–presents little risk of prejudice to any parties in this case arising out of the failure to join the bio-diesel firms in this particular action. Quite the contrary, if the McWhirters are found liable on this counterclaim, their status as co-obligors actually inures to the benefit of both the Selembos and the bio-diesel firms. In contrast, if the McWhirters are not found to be co-obligors on the bio-diesel firm debts, there is no prejudice to the Selembos since they may still pursue relief directly from the bio-diesel firms. See <u>Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., supra</u>

Second, we believe that in this setting, where the McWhirters are alleged to be co-obligors on this debt, the District Court can satisfy Rule 19's second guiding principle by protective provisions in the judgment, by the shaping of relief, and by other measures. Therefore, any prejudice to either the parties, or these non-party bio-diesel firms resulting from the failure to join these firms in this action can be largely avoided or minimized. Third, in our view a judgment entered in the absence of the bio-diesel firms holding the McWhirters personally and directly liable as co-obligors of this debt would certainly be adequate to protect the Selembos' interests, particularly if the bio-diesel firms are now insolvent as the McWhirters suggest. Thus, Rule 19's third guiding principle governing the discretionary determination of an indispensable party, whether a judgment rendered in the person's absence will be adequate, is also satisfied here. Fed.R.Civ.P. 19(b). See also Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 319 (3d Cir. 2007).[1]

In reaching this recommendation we acknowledge that the parties' competing legal contentions have, on occasion, been advanced in a fashion which has lacked a

---

[1] We note that Rule 19 also prescribes a fourth consideration, "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b)." Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 319 (3d Cir. 2007). In this case, the McWhirters claim that their state court remedy will not be adequate because of delays inherent in state litigation. (Doc. 27.) Given the Plaintiffs' stated preference for this federal forum, this factor is either essentially neutral or also tilts in favor of denial of this motion to dismiss.

certain clarity. We also recognize that the positions of the parties with respect to whether the Mcwhirters effectively became co-obligors of the bio-diesel firm debts may shift as this litigation progresses. Should these positions shift in a manner which substantially alters this assessment of the necessity or indispensability of the bio-diesel firms as parties in this lawsuit, it is recommended that this motion to dismiss be denied without prejudice to renewal of the claim in the future, if appropriate.

### III. Recommendation

For the foregoing reasons, IT IS RECOMMENDED that the Defendants/Counterclaim Plaintiffs to dismiss the complaint lodged against them by the Plaintiffs, (Doc. 12.), which argues that the complaint should be dismissed pursuant to Rule 12(b)(7), for failure to join indispensable parties, should be DENIED without prejudice.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of November, 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge